(No. 73-421—

LEXINGTON HOUSE, INC., Claimant, *vs.* STATE OF ILLINOIS, and DEPARTMENT OF PUBLIC AID, Respondent.

*Opinion filed November 29, 1976.*

LEITER, NEWLIN, FRASER, PARKHURST & MCCORD, by JOHN C. PARKHURST, of Counsel, Attorneys for Claimant.

WILLIAM J. SCOTT, Attorney General; WILLIAM E. WEBBER, Assistant Attorney General, for Respondent.

BURKS, J.

This claim arises under the provisions of Section 11-13 of the Illinois Public Aid (Ill.Rev.Stat. Ch. 23, §11-13), and is a claim for payment of vendor services.

This Court has jurisdiction under §8(a) of the Court of Claims Act to hear all claims against the State founded upon any law of the State of Illinois, or upon any regulation thereunder by an executive or administrative officer or agency, other than claims arising under the Workmen's Compensation Act or the Workmen's Occupational Diseases Act.

Lexington House, Inc., is a Delaware corporation, authorized to do business in Illinois, with its principal office in Peoria, Illinois. It operates a facility licensed by the Illinois Department of Public Health as a sheltered care home, located at 3111 W. Richards Boulevard, Peoria, Illinois, and known as Lexington House North, in which it cares for private patients and public patients, some of the latter being placed there by the Illinois Department of Mental Health and others by the Illinois Department of Public Aid.

Early in 1971, Claimant started a social rehabilitation program at Lexington House North which was reviewed by the Department of Mental Health and approved by that Department by memorandum dated February 18, 1971. The approval was effective as of March 1, 1971. The amount of the extra charge for this special service was $6.00 per month per person.

The Peoria office of the Department of Public Aid received a copy of the Department of Mental Health's approval of the program, and honored Claimant's billing for the additional service for the months of March and April, 1971.

Thereafter, the Supervisor of Caseworkers in the Peoria office of the Department of Public Aid, in a review of payments being made to vendors in the Peoria area by the Illinois Department of Public Aid, discovered that her departmental superiors in Springfield

had not yet approved Lexington House North for a social rehabilitation program nor authorized the payment of the additional monthly fee.

She thereupon notified Claimant by letter dated June 11, 1971, that the Department of Public Aid would not pay the extra $6.00 fee for mental and social rehabilitation beginning with the month of May, 1971.

In accordance with the directions contained in the letter, Claimant omitted the $6.00 increment from its billings for Public Aid patients for the month of May, 1971, and all months thereafter while its employees were discussing the matter with the Springfield office of the Department of Public Aid. The Department of Mental Health at all times continued to pay the additional charge for its patients.

Finally, by memorandum dated October 18, 1972, the Springfield office of the Department of Public Aid notified the Peoria Regional office that Claimant's social rehabilitation program had been approved retroactively to July 1, 1972.

Claimant seeks an award from this Court for the rehabilitation program services voluntarily furnished to Department of Public Aid patients during the period May 1, 1971, to July 1, 1972. At $6.00 per month per patient this charge totals $7,302.00. It should be borne in mind that Claimant furnished the additional services voluntarily with full knowledge that the Peoria office of the Department of Public Aid was refusing to approve payment for the same without approval from department officials in Springfield. The record is silent as to why Claimant did not discontinue the services to the Department of Public Aid patients. Perhaps it would have experienced practical difficulties in trying to eliminate selected patients from the program. In any

event, for whatever reason, Claimant continued to furnish these additional services to Department of Public Aid patients for a period of 14 months even though the Peoria office of the Department of Public Aid expressly notified Claimant that it would not pay the additional charge in the absence of approval from Springfield.

It is Claimant's contention that approval of the program by the Department of Mental Health was, in effect, binding on the Department of Public Aid. It is Claimant's contention that once the Department of Mental Health approved the program, the Department of Public Aid no longer had the right to review the program with respect to its own patients, but was automatically bound to accept the program and pay the additional charge.

Claimant has produced no statute or regulation showing that the approval of Claimant's social rehabilitation program by the Department of Mental Health was in any way legally binding on the Department of Public Aid. Common sense rejects such a conclusion. It is obvious that a department, acting alone, cannot obligate the budget of another department.

Additional light is shed on this matter by the procedure followed in 1970 when the Department of Public Health approved a so-called "activities" program for Lexington House North, also involving a charge of $6.00 per patient. The Department of Public Aid issued its separate approval of the program effective December 1, 1970. There was no contention that the Department of Public Health, by unilateral action, was able to obligate the budget of the Department of Public Aid.

This Court must reject Claimant's contention that approval of Claimant's social and mental rehabilitation program by the Department of Mental Health automati-

cally bound the Department of Public Aid to participate in and pay for the program.

Claimant next argues that it is "justly entitled" to the payment of its claim. The thrust of its argument is that the Peoria Regional office of the Department of Public Aid acted "unjustly" in refusing to pay for the services without departmental approval, and that the Department acted "unjustly" in granting approval retroactive only to July 1, 1972, rather than to May 1, 1971. Claimant states that for this Court to reject its claim would be "inequitable and unconscionable."

It is obvious that this Court is not a court in chancery, sometimes referred to as a court of "conscience." This Court can only exercise the jurisdiction given to it by the legislature. The office of equity is to supply defects in the law. This Court has no such jurisdiction.

Claimant also argues that for this Court to deny its claim would result in "unjust enrichment" to the State. Here again the Court of Claims does not have the jurisdiction of courts of law to hear claims for restitution and unjust enrichment.

Finally, even if this Court had full legal and equitable jurisdiction, it would be proper to deny Claimant's claim.

As stated in the article on *Restitution and Unjust Enrichment*, 46 Am.Jur. 100:

> Nor can one be held liable for benefits upon him against his will and efforts to prevent them. As somewhat variantly stated by some authorities, a person who officiously confers a benefit on another is not entitled to restitution therefor.

The crux of the matter is that during the entire 14 month period for which Claimant seeks reimbursement for its additional services, it was not only at liberty to

discontinue such services, but continued to render them in the face of express notification that it would not be paid for such services. Had Claimant discontinued its additional services until the matter was resolved, it would have suffered no loss.

This Court is not authorized to relieve Claimant from the consequences of its own actions under these circumstances.

This claim is hereby denied.